WILSON SONSINI GOODRICH & ROSATI
Luis Li (State Bar No. 156081)
luis.li@wsgr.com
953 East Third Street, Suite 100
Los Angeles, CA 90013
Tel: (323) 210-2900

PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (*pro hac vice* application to be filed)
sazalesin@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000

*Attorneys for Defendant*
*The Coca-Cola Company*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through Los Angeles County Counsel Dawyn R. Harrison,<br><br>Plaintiff,<br><br>v.<br><br>PEPSICO, INC; PEPSI BOTTLING VENTURES LLC; THE COCA-COLA COMPANY; and REYES COCA-COLA BOTTLING, LLC; and DOES 1-25, inclusive,<br><br>Defendants. | CASE No. 2:24-cv-10340<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION**<br><br>Removed from the Superior Court of California, Los Angeles County, Case No. 24STCV28450 |

TO THE JUDGES FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

**PLEASE TAKE NOTICE** that Defendant The Coca-Cola Company ("Coca-Cola") hereby notices removal of this civil action pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446 from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California. Coca-Cola is represented by the undersigned counsel and consents to this Notice of Removal. The grounds for removal are set forth below.

1. This Notice of Removal is timely because it is filed within thirty days of Defendant's receipt of the Complaint by service, as required by 28 U.S.C. § 1446(b).

2. This action is properly removed to the United States District Court for the Central District of California, and venue is proper in this District, because the Superior Court for the State of California for the County of Los Angeles, in which this action was originally filed, is within the Central District of California. *See* 28 U.S.C. §§ 84(c), 1441(a).

3. In accordance with 28 U.S.C. § 1446(d), Defendant is filing with the state court, and serving on the Plaintiff, a written Notice of Removal. Promptly upon filing this Notice of Removal, copies will be filed with the Clerk of the Superior Court for the State of California for the County of Los Angeles.

4. All properly joined Defendants who have been served consent to removal as required by 28 U.S.C. § 1446(b)(2)(A). *See* Declaration of Luis Li ("Li Decl.") ¶ 3; *see also Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) ("One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient.").

5. The Court has original federal question jurisdiction under 28 U.S.C. § 1331 because the Complaint arises under federal law. The Court also has federal officer jurisdiction under 28 U.S.C. § 1442 because Plaintiff's claims relate to work that at least some Defendants performed under the direction of federal officers.

# PLAINTIFF'S COMPLAINT

6. On October 30, 2024, Plaintiff commenced this action by filing a Complaint in the Superior Court for the State of California for the County of Los Angeles, captioned *The People of the State of California v. Pepsico, Inc.; Pepsi Bottling Ventures LLC; The Coca-Cola Company; and Reyes Coca-Cola Bottling, LLC; and Does 1-25 inclusive*, Case No. 24STCV28450. As required by 28 U.S.C. § 1446(a), attached as Exhibits A-J[1] are copies of all process, pleadings, orders, and other papers or exhibits filed in the state court.

7. A true and correct copy of the Complaint is attached as Exhibit B. Coca-Cola was served with the Summons and Complaint on November 1, 2024. (Ex. J at 1.) The other named Defendants are Reyes Coca-Cola Bottling, L.L.C. ("Reyes Bottling"), PepsiCo, Inc. ("Pepsi"), and Pepsi Bottling Ventures LLC ("Pepsi Bottling"). Coca-Cola, Reyes Bottling, Pepsi, and Pepsi Bottling have all been served and are thus properly joined. (Exs. G-I.)

8. The Complaint was filed by the Los Angeles County Counsel and purports to be brought on behalf of the People of the State of California as the Plaintiff. (Ex. B ¶ 12.)

9. Plaintiff's claims in this case relate to plastic products that are lawfully produced and distributed nationwide by the Defendants. (*Id.* ¶¶ 14-19.)

10. Plaintiff purports to assert state-law claims for alleged injuries relating to the accumulation of plastic waste in coastal areas and waterways, including oceans, well beyond the reach of California laws and even the jurisdiction of the United States. *See id.* ¶¶ 7, 27, 31, 35, 70. According to Plaintiff, "plastic pollution has spread to every corner of the planet." *Id.* ¶ 36. Although Plaintiff does not allege that any Defendant improperly disposed of plastic waste, it asserts that Defendants have

---

[1] Citations to "Exhibit" or "Ex." are to exhibits attached to the Declaration of Luis Li.

contributed to plastic pollution "throughout the United States" and the world by manufacturing and distributing plastic products. *Id.* ¶ 49.

11. Plaintiff seeks to assert claims for public nuisance under Cal. Civ. Code §§ 3479 and 3480 (Count I); California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Count II); and California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* (Count III).  (*Id.* ¶¶ 95-129.)

12. Among other forms of relief, Plaintiff seeks an injunction, restitution, civil penalties, and costs.  (*Id.* at 40-41.)

## BASIS FOR REMOVAL JURISDICTION

13. This action is removable on two independent grounds.

**I.   Federal Question Jurisdiction**

14. This action is removable because Plaintiff's claims, to the extent that such claims exist, necessarily have their source in federal common law, not California state law.  Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "'claims founded upon federal common law as well as those of a statutory origin.'" *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985) (quoting *Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1972) ("*Milwaukee I*").

15. Federal common law applies in subject areas in which there are "uniquely federal interests." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988). *See generally* Henry J. Friendly, *In Praise of* Erie—*and the New Federal Common Law*, 39 N.Y.U. L. Rev. 383 (1964).  Federal common law governs where, for example, "there is an overriding federal interest in the need for a uniform rule of decision or where the controversy touches basic interests of federalism . . . ." *Milwaukee I*, 406 U.S. at 105 n.6; *see also Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421–22 (2011) ("*AEP*") (federal common law applies to issues "within national legislative power" and for which there is "a demonstrated need for a federal rule of decision"); *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159–60 (9th Cir. 2016) (liability of defense contractor to third party under government contract for

weapons systems implicated "uniquely federal interest" in national security that would be impaired if disparate state-law rules were applied).

16. Claims involving the pollution of oceans and waterways are one such area where, post-*Erie*, federal common law is essential to avoid a patchwork of fifty different competing and conflicting state legal standards. The Supreme Court has repeatedly emphasized this point: "When we deal with air and water in their ambient or interstate aspects, there is a federal common law." *Milwaukee I*, 406 U.S. at 103; *see also AEP*, 564 U.S. at 421 ("Environmental protection is undoubtedly an area within national legislative power, [and] one in which federal courts may fill in statutory interstices . . . ."); *Int'l Paper Co v. Ouelette*, 479 U.S. 481, 488 (1987) ("[T]he regulation of interstate water pollution is a matter of federal, not state, law . . . ."); *Kivalina v. Exxon Mobil Corp.*, 696 F.3d 849, 855 (9th Cir. 2012) (explaining that "[p]ost-*Erie*, federal common law includes the general subject of environmental law and specifically includes ambient or interstate air and water pollution"). "Federal common law and not the varying common law of the individual States" applies here due to the recognized need for a "uniform standard" when dealing "with the environmental rights of a State against improper impairment by sources outside its domain." *Milwaukee I*, 406 U.S. at 107 n.9 (quoting *Texas v. Pankey*, 441 F.2d 236, 241–42 (10th Cir. 1971)); *see also* 33 U.S.C. § 1253 (stating the need for "uniform State laws relating to the prevention, reduction, and elimination of pollution"); *United States v. Standard Oil Co.*, 332 U.S. 301, 307 (1947) (federal common law supplies the rule of decision where the "federal judicial power" must "remain[] unimpaired for dealing independently, wherever necessary or appropriate, with essentially federal matters").

17. Courts have recognized that the federal common law generally extends to cases involving "environmental and economic destruction" of navigable waters by any means. *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 771–72 (7th Cir. 2011) (federal common law governed nuisance claim alleging that defendant's

operation of the Chicago Area Waterway System would allow non-native species of carp to enter the Great Lakes).

18. Here, to the extent that Plaintiff's claims can be maintained at all, they necessarily derive from federal common law. Plaintiff does not challenge uniquely localized pollution arising from a specific source point in California. *Cf. Nat'l Audubon Soc'y v. Dept. of Water*, 869 F.2d 1196, 1198 (9th Cir. 1988). Rather, Plaintiff's allegations have a distinctly global scope and therefore require a "uniform rule of decision . . . ." *Milwaukee I*, 406 U.S. at 105 n.6. Plaintiff asserts that Defendants have caused or contributed to the undifferentiated accumulation of plastic waste and proliferation of ambient microplastics in oceans and other waters and coastal areas from sources around the United States and around the globe. *See, e.g.*, Ex. B ¶¶ 1 (describing "[p]lastic pollution" as a "global crisis"); 26 (alleging that "11 million tons of plastic waste become aquatic pollution" worldwide each year, "between 1.13 million to 2.24 million metric tons of plastic waste leak into the environment each year" nationwide, and "[p]lastic products account for approximately 85 percent of total marine waste and between 70 to 80 percent of all waste that ends up on land of in marine environments combined"); 38 ("Microplastic pollution has emerged as a global environmental threat . . . ."); 49 (alleging that certain Defendants are among the top plastic polluters in the world and contribute to pollution "throughout the United States"); 53 (describing the types of plastic material comprising plastic pollution "around the world").

19. Moreover, Plaintiff's public nuisance claim will require judgment about the "reasonableness" of any Defendant's conduct, including the amount and type of plastic packaging used; the social benefits of plastic packaging; the labeling and marketing of each Defendant's products as recyclable; whether any Defendant deviated from the applicable standard of care; and the causal contribution (if any) by any Defendant to the accumulation of plastic, which necessarily requires an evaluation of interstate and transnational conduct. None of the conduct Plaintiff

alleges on the part of Defendants is unique to California.

20. Plaintiff's claims also invade the federal government's exclusive authority over foreign commerce and affairs, including on the high seas, and thus "touch[] basic interests of federalism . . . ." *Milwaukee I*, 406 U.S. at 105 n.6. Plaintiff seeks redress for a global social challenge requiring the engagement and cooperation of the international community. "[F]ederal common law exists" in precisely such areas that involve "interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations . . . ." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981). "In these instances, our federal system does not permit the controversy to be resolved under state law, either because the authority and duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control." *Id.*

21. The harms Plaintiff alleges are at the center of a global debate regarding the production, distribution, consumption, and disposal of plastic packaging nationwide and worldwide. These are transboundary issues that exclusively involve federal law.

22. Recently, the international community has increased its focus on reducing the proliferation of plastic waste in the global marine environment, including by working to update existing treaties and other instruments specifically to address this issue. For example, in 2022, the United Nations Environment Assembly passed a historic resolution to develop a multilateral legally binding instrument on plastic pollution, including in the marine environment. That instrument, which is currently being negotiated, will address "the full life cycle of plastic, including its production, design, and disposal." *See* U.N. Environment Programme, *Intergovernmental Negotiating Committee on Plastic Pollution*, https://www.unep.org/inc-plastic-pollution (last visited Dec. 2, 2024). At the same time, the Basel Convention on the Controls of Transboundary Movements of Hazardous Waste and their Disposal,

which was amended to include both hazardous and nonhazardous plastic waste in 2019, continues to work to increase transparency in global trade in plastic waste and to improve safety for human health and the environment. *See* U.N. Environment Programme, *Basel Convention, Implementation*, https://www.basel.int/Implementation/ProgrammeofWork/tabid/1283/Default.aspx (see Programmes of work and budgets) (last visited Dec. 2, 2024). In addition, the Global Partnership on Marine Litter brings together multiple stakeholders—including governments, international organizations, businesses, academia, non-governmental organizations, and individuals—for the express purpose of preventing waste and managing and reducing the impacts of marine litter worldwide. *See* Global Partnership on Plastic Pollution and Marine Litter, *Who We Are*, https://digital.gpmarinelitter.org/page/who-we-are (Dec. 2, 2024).

23. Numerous statutes and federal initiatives further underscore the "uniquely federal interests," *Boyle*, 487 U.S. at 504, in regulating post-consumer plastics on a national and international level. Less than two weeks ago, the Environmental Protection Agency announced a national strategy to combat pollution from plastic production at the national and global levels. EPA, *Biden-Harris Administration Announces National Strategy to Prevent Plastic Pollution* (Nov. 21, 2024), https://www.epa.gov/newsreleases/biden-harris-administration-announces-national-strategy-prevent-plastic-pollution; EPA, *National Strategy to Prevent Plastic Pollution* (Nov. 26, 2024), https://www.epa.gov/circulareconomy/national-strategy-prevent-plastic-pollution. This recent announcement followed the EPA Office of the Inspector General's evaluation of "the extent to which the EPA's existing Clean Water Act programs and Office of Research and Development initiatives address threats and risks to public health and the environment from plastic pollution within

the waters of the United States."[2] Memorandum from the U.S. Envtl. Protection Agency on the Effectiveness of Clean Water Act to Protect from Plastic Pollution (Oct. 30, 2019), https://www.epa.gov/sites/production/files/2019-10/documents/_epaoig_notificationmemo_10-30-19_plasticpollution.pdf.

24. Moreover, in recent years Congress has enacted and considered legislation designed to address precisely the types of harms Plaintiff alleges. *See, e.g.*, Save Our Seas Act of 2018, Pub. L. No. 115-265, 132 Stat. 3742 (reauthorizing and expanding the National Oceanic and Atmospheric Administration's Marine Debris Program and calling for increased international engagement, particularly with countries most responsible for marine plastic waste); Break Free From Plastic Pollution Act of 2023, S. 3127, 118th Cong. (2023) (proposing to shift greater responsibility to producers of plastic products for collecting and recycling these materials); Partnering and Leveraging Assistance to Stop Trash for Cleaner Seas Act (PLASTICS Act), H.R. 4636, 116th Cong. (2019) (calling on the Executive Branch to "advance efforts to work with national governments and local communities to develop integrated waste management systems" and "encourage[] federal departments and agencies to work with entities in the private sector and with nongovernmental organizations to leverage private and public capital to complement United States assistance programs").

25. Because federal common law governs Plaintiff's claims, state law necessarily cannot do so. *See City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 313 n.7 (1981) ("*Milwaukee II*") ("[I]f federal common law exists, it is because state law cannot be used."); *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 955 (9th Cir. 1996) (affirming removal because "state law is totally displaced by federal

---

[2] Congress enacted the Clean Water Act "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), and to facilitate international cooperation "for the prevention, reduction, and elimination of pollution" in the waters of foreign countries "and in international waters," *id.* § 1251(c).

common law" when "the federal interest requires that 'the rule must be uniform throughout the country'" (citation omitted)); *Nat'l Audubon Soc'y*, 869 F.2d at 1204 ("[I]t is inconsistent to argue 'that both federal and state nuisance law apply to this case. . . . [I]f federal common law exists, *it is because state law cannot be used*.'" (citation omitted; emphasis added)).

26. Federal jurisdiction exists because "the scope, nature, legal incidents and consequences" of Plaintiff's claims "are fundamentally derived from *federal sources* . . . ." *Standard Oil*, 332 U.S. at 305–06 (emphasis added). And a court must look to the source, rather than the substance, of a claim to determine whether it "arises under" federal law. *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 42 (1st Cir. 1999). Defendants will ultimately show that Plaintiff's claims are meritless as a matter of law. But because Plaintiff's claims "deal with air and water in their ambient or interstate aspects," *Milwaukee I*, 406 U.S. at 103, they have their source in and must be governed by "federal, not state, law," *Ouellette*, 479 U.S. at 488. As the Supreme Court has held, cross-boundary pollution claims necessarily "arise under" federal law even where federal law ultimately does not provide a remedy because "the basic scheme of the Constitution" precludes application of state law. *AEP*, 564 U.S. at 420–21. In these circumstances, "[b]orrowing the law of a particular State would be inappropriate . . . ." *Id.* at 422.

27. In sum, because Plaintiff's claims arise under federal common law, this Court has federal question jurisdiction and removal is proper.

**III. Federal Officer Jurisdiction**

28. ***Second***, removal is proper under 28 U.S.C. § 1442(a)(1) because, assuming the truth of Plaintiff's allegations, a causal nexus exists between Plaintiff's claims and conduct that some Defendants have undertaken under the control and direction of federal officers; Defendants are "persons" within the meaning of the statute; and Defendants can assert several colorable federal defenses. *See Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014).

29. This action is removable under the federal officer removal statute, 28 U.S.C. § 1442, because Plaintiff bases liability on activities undertaken at the direction of the federal government. The federal officer removal statute allows removal of an action against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1). Jurisdiction under the federal officer removal statute is afforded a "generous" interpretation," *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006), and the "policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1),'" *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). "A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251 (citations omitted).

30. All three elements are satisfied here. Each Defendant is a corporation and therefore a "person" within the meaning of the statute. *See Leite*, 749 F.3d at 1122 n.4; *Mateo v. Chevron Corp.*, 32 F.4th 733, 757 n.15 (9th Cir. 2022) ("We have held that corporations are 'persons' under § 1442(a)(1)" (citation omitted)). Some Defendants have federal contracts requiring them to take actions under a federal officer's direction that have a "causal nexus" with Plaintiff's allegations about plastic waste.[3] *See Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020)

---

[3] *See, e.g.*, U.S. Dep't of Defense, Defense Logistics Agency, Solicitation/Contract/Order for Commercial Items Between U.S.A. and The Coca-Cola Company (Jan. 30, 2024), https://www.dla.mil/Portals/104/Documents/TroopSupport/Subsistence/Food%20Services/Beverages/24D3008.pdf; U.S. Dep't of Defense, Defense Logistics Agency, Solicitation/Contract/Order for Commercial Items Between U.S.A. and PepsiCo Beverage Sales LLC (Nov. 16, 2023),

(*en banc*). These include, for example, providing beverages and related equipment to the U.S. military. *See Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34 n.3 (1st Cir. 2022) ("Courts have consistently held that the 'acting under' requirement is easily satisfied where a federal contractor removes a case involving injuries arising from a product manufactured for the government."). These Defendants, in other words, "help[] the Government to produce an item that it needs"—which, "in the absence of a contract with a private firm, the Government itself would have had to perform." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153–54 (2007). And Defendants intend to raise numerous colorable federal defenses, including preemption, *see Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1249 (9th Cir. 2017), and that Plaintiff's claims are barred by the U.S. Constitution, including the Commerce and Due Process Clauses, as well as the First Amendment and separation of powers. *See Willingham*, 395 U.S. at 407 (a defendant invoking section 1442(a)(1) "need not win his case before he can have it removed"). For all of these reasons, removal under 28 U.S.C. § 1442 is proper.

**IV. Coca-Cola Has Complied with All Prerequisites for Removal.**

31. For all of the foregoing reasons, this action is properly removed to this Court.

32. Coca-Cola reserves the right to amend or supplement this Notice of Removal, and reserves all rights and defenses under California and/or federal law, including those available under the Federal Rule of Civil Procedure 12.

33. The other Defendants, all of whom consent to removal, also reserve the rights described above.

34. Thus, the filing of this Notice of Removal, as well as any related procedural filings including but not limited to notices of appearance, shall not be

---

https://www.dla.mil/Portals/104/Documents/TroopSupport/Subsistence/Food%20Services/Beverages/24D3009.pdf.

construed as a waiver of this right. *See Strojnik v. Starbucks Corp.*, 2023 WL 322893, at *3 (N.D. Cal. Jan. 19, 2023); *Freeney v. Bank of Am. Corp.*, 2015 WL 4366439, at *20 (C.D. Cal. July 16, 2015).

**WHEREFORE**, Coca-Cola respectfully removes this action from the Superior Court for the State of California for the County of Los Angeles (Case No. 24STCV28450), to this Court pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being contemporaneously filed with the Clerk of the Los Angeles County Superior Court and served upon Plaintiff.

Dated: December 2, 2024

Respectfully submitted,

 */s/ Luis Li*
WILSON SONSINI GOODRICH & ROSATI
Luis Li (State Bar No. 156081)
luis.li@wsgr.com
953 East Third Street, Suite 100
Los Angeles, CA 90013
Tel: (323) 210-2900

PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (*pro hac vice* application to be filed)
sazalesin@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2222

*Attorneys for Defendant The Coca-Cola Company*